IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OYO HOTELS, INC.,** | § § | |
| Plaintiff, | § § | |
| v. | § § | **CIVIL ACTION NO.** |
| | § § | _____ |
| **JEET, LLC** | § § | |
| Defendant. | § § | |

## ORIGINAL COMPLAINT

Plaintiff OYO Hotels, Inc. files this Original Complaint against Defendant Jeet, LLC, and would respectfully show the Court as follows:

### PARTIES

1. Plaintiff OYO Hotels, Inc. (herein, "OYO") is a Delaware corporation with its principal place of business in Dallas, Texas. Accordingly, Plaintiff is a citizen of the states of Delaware and Texas.

2. Defendant Jeet, LLC (herein, "Jeet") is an Oklahoma limited liability company with its principal place of business in Miami, Oklahoma. On information and belief, Defendant Jeet's sole member is Simit Vinodrai "Vinod" Patel, who is a permanent resident of and is domiciled in Oklahoma. Thus, Defendant Jeet is a citizen of Oklahoma and no other state. Summons may be served on Simit Vinodrai "Vinod" Patel, its sole member and registered agent for service, at Jeet's principal place of business and address for its registered agent – 900 E Steve Owens Blvd, Miami, Oklahoma 74354 – pursuant to Federal Rule of Civil Procedure 4(h)(1).

## JURISDICTION

3. The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs. Plaintiff is a citizen of the states of Delaware and Texas. Defendant Jeet is a citizen of the State of Oklahoma.

4. The contract between OYO and Jeet provides: "Any dispute arising out of or in connection with this Agreement shall be governed in accordance with the laws of the State of Texas and the local courts of Dallas County, Texas shall have jurisdiction to adjudicate this matter." *See* Agmt. § 7 (a true and correct copy of the below-defined Agreement is attached hereto as Exhibit 1 and incorporated fully herein by reference). Accordingly, Jeet has consented and submitted to the personal jurisdiction of this Court. Furthermore, venue is proper in this district and division in accordance with the parties' valid, enforceable forum-selection clause.

5. Alternatively, venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTUAL BACKGROUND

6. Jeet owns and operates a hotel facility located at 900 E Steve Owens Blvd, Miami, Oklahoma (herein, the "Hotel").

7. On or about September 30, 2019, OYO and Jeet entered into the certain Marketing, Consulting and Revenue Management Agreement (the "Agreement"). *See generally* Agmt. (Ex. 1).

8. Under the Agreement, among other salient terms, OYO would provide the "Facility Owner" (here, Jeet) with an up-front capital contribution (the "Capital Improvement Investment")

(here, $86,337) to make required property improvements and then provide revenue management, marketing and online booking services for Jeet's hotel located in Miami, Oklahoma.

9. In return, Jeet agreed, among other salient terms, that it would timely complete the required property improvement work, that OYO had the exclusive right to set room rates, that all rooms at the Hotel would be available on the OYO platform, that all reservations and bookings would go through the OYO platform, and that all revenue for the property would be recorded through the OYO OS system. The scope of the required property improvements (the "transformation work") was set forth in Exhibit A to the Agreement. The Agreement required that the transformation work be completed within forty-five (45) days of the Effective Date of the Agreement. *See* Agmt. § 2(c).

10. The Agreement also stated that either party may terminate the Agreement without cause by giving the other party thirty (30) days' notice. *See* Agmt. § 9. In the event such termination was made during the Initial Term by the Facility Owner (here, Jeet) or by OYO in case of breach the Agreement by Jeet, that Jeet shall pay OYO an amount that is equal to 1.25 times the unamortized portion of the Capital Improvement Investment (the "Termination Fee").

11. In sum and substance, the Agreement provided that the Hotel would operate as an OYO branded hotel, that OYO would set prices, and manage online reservations, that Jeet would run the hotel's on-site operations, that OYO would be entitled to certain commissions as set forth in the Agreement and that (subject to certain conditions and terms) that Jeet could be eligible to receive a Revenue Guarantee payment.

12. The Revenue Guarantee provision generally provides that where monthly gross revenue for the hotel fails to meet an individually set target that OYO will pay the Facility Owner a payment calculated as set forth in Section 3 of the Agreement. *See* Agmt. § 3.

13. Importantly, the Revenue Guarantee is not absolute. For example, it does not begin until the later of 30 days after the Go-Live Date or the completion and sign-off by OYO of the required transformation work listed on Exhibit A of the Agreement. *Id.* Further, payment of the Revenue Guarantee is subject to clawback (as a deduction from future payments otherwise due to the Facility Owner) where revenue in a subsequent month rises above the minimum amount. *Id.*

14. Further, the Agreement provides that the Revenue Guarantee is adjusted monthly based on room availability:

> The Revenue Guarantee Amount will be pro-rated based upon the actual number of available rooms every month. If any number of rooms at the Building are blocked during the month (either by Owner or OYO) for any reason including planned or unplanned repair or maintenance, the applicable Revenue Guarantee Amount will be adjusted in a pro-rata manner to correspond with the number of online rooms. For example, if 50% of the rooms are offline for maintenance in April, the applicable Revenue Guarantee Amount will be 50% of the number stated above for the month of April.

*Id.* § 3. Importantly, either the Facility Owner or OYO may designate rooms as unavailable "***for any reason***." *Id.* Where rooms are designated as unavailable, the Agreements provide that such rooms are not included in the calculation of the Revenue Guarantee. *Id*.

15. The Agreement also provides termination rights for both OYO and the Facility Owner: "[e]ither Party may terminate this Agreement without assigning any cause by giving the other Party a prior written notice of 30 days." Agmt. § 9. In other words, while the Agreement was for a seven-year initial term, the contract was terminable-at-will by either party upon thirty (30) days' notice. *Compare* Agmt. § 1 *with* Agmt. § 9 (thirty-day termination without cause rights).

16. Recognizing that it was entering a new market, OYO also included substantial modification rights in OYO's favor in the Agreement stating that "OYO reserves the right to

propose a change in the terms of this Agreement any time during the Term by giving a prior written notice of 15 days to the Facility Owner." Agmt. § 10. Where the Facility Owner objects to the modification and the parties are unable to reach a resolution of that objection, the Facility Owner can terminate the Agreement with thirty days' notice and where such modification causes the Facility Owner "substantial commercial prejudice," the Facility Owner does not have to repay OYO for the upfront capital investment made by OYO at the outset of the parties' relationship. *Id*.

17. Between September 2019 and October 2020, OYO performed its obligations under the Agreement by making a Capital Improvement Investment in the Hotel to fund interior and exterior improvements of the property, and providing management, consulting and marketing services for the property. *See* Agreement ¶ 2(a).

18. On January 28, 2020, OYO sent written correspondence to Jeet informing it that the property transformation work required by the Agreement remained incomplete. Despite the deadline having since expired, OYO provided Jeet with an additional thirty (30) days to complete any outstanding work and notify OYO or to contact OYO to seek an extension. OYO advised Jeet that if the building transformation work remained incomplete, OYO would exercise at its discretion all remedies granted to it under the terms of the Agreement.

19. On March 17, 2020, Jeet advised OYO that it had completed "most" of the remaining transformation work but admitted that it was not yet complete.

20. That same month, the World Health Organization declared COVID-19 as a global pandemic and the hospitality industry to a complete halt.

21. Responding to the numerous "Shelter in Place" orders and directives and other COVID-19 developments, OYO sent a letter to Jeet (and other hotel owners who had not

completed the required transformation work to be eligible for a Revenue Guarantee). In the letter, OYO advised that it had determined that the various orders, directives, and other COVID-19 developments rendered rooms "unavailable" under Section 3 of the Agreements and thus OYO was suspending payment of the Revenue Guarantee. While not then applicable to Jeet, OYO wanted to make them aware of the suspension for, among other reasons, so they would not feel compelled to complete transformation work, during that period of uncertainty and acute safety concerns. That communication also gratuitously advised Jeet and the other hotel owners who were not yet "TR complete" that OYO was—effective immediately—cutting its base commission rate by fifty percent and wholly suspended its commissions on any revenues that hotels were able to generate should they be able to operate—at all—under local orders applicable to their facility.

22. Shortly after that correspondence was sent to Jeet, it (of course) began claiming that it had completed the required transformation work that for reasons unknown Jeet had failed and refused to complete for the previous six months. And of course, at that time, OYO was unable to complete an audit of that work because its employees were subject to shelter-in-place orders.

23. On September 2, 2020, OYO sent Jeet notice of termination of the Agreement. In the notice of termination, OYO informed Jeet that OYO would discontinue all services on October 2, 2020. Under the circumstances, OYO declined to terminate the Agreement for cause.

24. On October 23, 2020, counsel for Jeet (Patel PC and Perdue & Kidd, of Houston) sent a demand letter to OYO alleging that OYO's actions constituted over a dozen different causes of action for, among other things, breach of contract, various forms of negligence, various forms of fraud, breach of warranties and implied duties.

25. Specifically, it alleged that OYO had made "misrepresentations, fabrications and failure[s] to disclose information" required by the Texas Business Opportunities Act and the

federal Franchise Rules. Jeet characterized the Agreement as a "franchise" agreement subject to the Texas Business Opportunities Act (Texas Business & Commerce Code, Chapter 51) and the federal Franchise Rules codified at 16 CFR 436 and 437 and argued that OYO's conduct and lack of "required disclosures" constituted violations of the Deceptive Trade Practices Act.

26. The letter also alleged that OYO had failed to pay the Revenue Guarantee since the Agreement's inception despite the fact that no Revenue Guarantee was due until after the completion *and sign-off by OYO* of the required transformation work listed on Exhibit A of the Agreement (*see* Agmt. § 3) and that additional capital improvement funds and "post-termination conversion costs" were not due to Jeet.  The letter also disputed that OYO was entitled to designate rooms as unavailable under the parties' Agreement and claimed that doing so was "wrongful conduct."

27. Then—incredulously—Jeet demanded that OYO immediately pay **$1,443,200.10**—*three times the amount that Jeet alleged was due*—to its lawyer's trust account or that Jeet would file a class action lawsuit against OYO.  In sum and substance, it was an attempted shakedown.

## CAUSE OF ACTION

### COUNT SOLO– DECLARATORY RELIEF

28. OYO incorporates by reference herein the factual allegations and matters set forth in the preceding paragraphs.

29. OYO brings this suit for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

30. A case or actual controversy within this Court's jurisdiction exists between OYO and Jeet relating to their relative rights and obligations under the Agreement.

31.     According to the terms of the Agreement, Jeet was responsible for ensuring completion of all of the transformation work on the property. Agreement ¶ 2(c). The Agreement further provided that the Revenue Guarantee Amounts would not begin until the *later* of (i) thirty days after the Agreement's "Go-Live Date" or (ii) Jeet's completion of the transformation work and OYO's approval of the transformation work. *See* Agreement ¶ 3.

32.     Because Jeet failed to timely complete the Agreement's required transformation work and then OYO subsequently suspended the Revenue Guarantee due to the COVID-19 pandemic rendering rooms unavailable under Section 3 of the Agreement, the Revenue Guarantee provisions of the Agreement never came into effect and OYO thus never paid Jeet any Revenue Guarantee amounts.

33.     A conflict exists between OYO and Jeet as to whether or not OYO was obligated to make payments of the Revenue Guarantee amounts despite Jeet's failure to timely complete the prerequisite transformation work and OYO subsequently suspending the Revenue Guarantee due to the COVID-19 pandemic rendering rooms unavailable under Section 3 of the Agreement.

34.     A further conflict exists between OYO and Jeet as to whether or not the Agreement constitutes a "business opportunity" under the Texas Business Opportunities Act and/or a "franchise agreement" subject to the disclosure and registration requirements of the federal Franchise Rules (14 CFR 436 and 437).

35.     Because of Jeet's failure to complete the transformation work required by the Agreement and subsequent objection to OYO's suspension of the Revenue Guarantee due to COVID-19 rendering rooms unavailable, OYO seeks a declaration from this Court that under the terms of the Agreement, OYO does not owe Jeet any of the Revenue Guarantee Amounts because Jeet failed to timely and fully perform the required transformation work and OYO was

subsequently entitled to designate rooms as unavailable and thus suspend the Revenue Guarantee under the terms of the Agreement.

36. OYO further seeks a declaration from this Court that the Agreement does not constitute a "business opportunity" under the Texas Business Opportunities Act. Such declaration would terminate the uncertainty and controversy giving rise to this proceeding and Jeet's demand for $1,443,200.10 dollars and threat of a class action against OYO.

37. And finally, OYO further seeks a declaration from this Court that the Agreement does not constitute a "franchise" under the federal Franchise Rules. Such declaration would terminate the uncertainty and controversy giving rise to this proceeding and Jeet's demand for $1,443,200.10 dollars and threat of a class action against OYO.

38. OYO seeks, and is entitled to recover, its costs and reasonable attorneys' fees as are equitable and just in bringing this cause of action for Declaratory Relief.

## ATTORNEYS' FEES AND COSTS

39. OYO incorporates by reference herein the allegations set forth in the preceding paragraphs.

40. As a result of Jeet's actions, it was necessary for OYO to employ the services of the undersigned counsel to institute and prosecute this action. OYO is entitled to recover all reasonable and necessary attorneys' fees and costs incurred in prosecuting this lawsuit.

## CONDITIONS PRECEDENT

41. All conditions precedent to OYO's recovery have been performed or have occurred as required by applicable law.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff OYO Hotels, Inc. respectfully requests that Defendant Jeet, LLC be cited to appear and answer herein and that upon final hearing of this case, Plaintiff have judgment against Defendant, and be awarded the following:

1) a declaration from the Court that OYO does not owe Jeet any of the Revenue Guarantee Amounts because Jeet failed to timely and fully perform the required transformation work and OYO was subsequently entitled to designate rooms as unavailable and thus suspend the Revenue Guarantee under the terms of the Agreement;
2) a declaration from the Court that the parties' Agreement does not constitute a "business opportunity" under the Texas Business Opportunities Act;
3) a declaration from the Court that the parties' Agreement does not constitute a "franchise" under the federal Franchise Rules;
4) equitable relief to the extent permitted by law;
5) reasonable attorney's fees and court costs, at all levels of the legal process;
6) any and all recoverable or taxable costs to the extent permitted by law;
7) For all costs of court; and
8) for such other and further relief, both general and special, at law or in equity, to which Plaintiff may be justly entitled.

Date: November 17, 2020

Respectfully submitted,

　/s/ *Meagan Martin Powers*　　
Meagan Martin Powers
State Bar No. 24050997
M. Angelita Delgadillo
State Bar No. 24072507
**MARTIN POWERS & COUNSEL, PLLC**
600 East John Carpenter Fwy, Suite 234
Irving, Texas 75062
Telephone: (214) 612-6474
Direct Line: (214) 612-6471
Facsimile: (214) 247-1155
meagan@martinpowers.com
angelita@martinpowers.com

**COUNSEL FOR PLAINTIFF**
**OYO HOTELS, INC.**