IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OYO HOTELS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-3434-N |
| | § | |
| JEET, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Jeet, LLC's ("Jeet") motion to dismiss [6]. Jeet's business arrangement with OYO Hotels created sufficient minimum contacts to support exercise of personal jurisdiction over it, and venue in this Court is otherwise proper. Accordingly, the Court denies Jeet's motion to dismiss.

**I. THE ORIGINS OF THE DISPUTE**

This case involves a dispute over fees allegedly owed by the owner of a hotel brand to the owner-operators of two of the brand's properties. Jeet runs a hotel in Oklahoma. Pl.'s Orig. Compl. ("Complaint") 2 [1]. Plaintiff OYO Hotels, Inc. ("OYO") markets hotel properties under its brand name throughout the world. Decl. of Sonal Sinha ¶ 1 [16-2]. In 2019, the parties agreed that Jeet would convert its hotel to an OYO-branded property. Complaint 2. To accomplish this, Jeet agreed to perform renovations in line with standards supplied by OYO. *Id.* at 3. For its part, OYO agreed to fund this work. *Id.* at 2. OYO would market the property, manage the hotel's online presence, and exercise unilateral

ORDER – PAGE 1

authority over all relevant pricing terms including room rates and deposits. Decl. of Vishal Singh ¶¶ 7–11 [16-2]. All digital bookings would pass either through OYO's own platform or come through third-party websites with which OYO maintained relationships. Complaint 3. The teams responsible for maintaining OYO's proprietary pricing software and managing the Jeet property's online presence operated out of the Dallas headquarters. Decl. of Vishal Singh ¶ 12. Jeet retained the obligation to conduct physical on-site operations and maintain a full inventory of available rooms to which OYO could direct bookings. Complaint 3.

Within several months conflict arose between the parties. OYO alleges that Jeet never satisfactorily completed the contemplated renovation work. *Id.* at 5. Jeet contends that it did complete the renovation and that OYO subsequently failed to make "Revenue Guarantee" payments, which by the terms of the contract OYO owed only after successful completion of the renovation. *Id.* at 6–7. OYO provided written notice of its intent to terminate the agreement on September 2, 2020 and ultimately discontinued services to Jeet thirty days later. *Id.* at 6.

Jeet, through its counsel, sent OYO a demand letter threatening to sue to recover Revenue Guarantee payments that Jeet claimed OYO wrongfully failed to pay. *Id.* at 7. Jeet further alleged that OYO's business practices violated Texas and federal franchise laws, threatened to proceed as representatives of a class of similarly situated property owners, and advised that it would seek statutory treble damages. *Id.* at 6–7. OYO commenced this action for declaratory judgment as to whether OYO's nonpayment constituted breach of contract and on the state and federal law issues raised by Jeet in its

ORDER – PAGE 2

demand letter. *Id.* at 7–10. Jeet has moved to dismiss, citing lack of personal jurisdiction, improper venue, and lack of subject matter jurisdiction.

## II. VENUE PROPERLY LIES IN THIS DISTRICT

Jeet argues that the forum selection clause included in the written agreement mandates that litigation related to the agreement proceed in Texas state courts. As such, Jeet contends, the Court should dismiss the action under either Rule 12(b)(1) or 12(b)(3) to enforce the forum selection clause. In the alternative, Jeet presses for dismissal under Rule 12(b)(3) on the grounds that OYO's pleadings fail to establish the propriety of venue in this District under the federal venue statute, 28 U.S.C. § 1391. In order to determine whether the Court should dismiss the action to enforce the forum selection provision, the Court must first assess whether the clause requires litigation in a specific forum or merely constitutes consent to jurisdiction.

### A. The Forum Selection Clause Does Not Restrict Litigation to a Particular Forum

Courts recognize two types of forum selection clauses, mandatory and permissive. As the Fifth Circuit has explained:

> Our caselaw recognizes a sharp distinction between mandatory and permissive FSCs [forum selection clauses]. A mandatory FSC affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive FSC is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum. Only mandatory clauses justify transfer or dismissal. An FSC is mandatory only if it contains clear language specifying that litigation must occur in the specified forum—and language merely indicating that the courts of a particular place "shall have jurisdiction" (or similar) is insufficient to make an FSC mandatory.

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) (footnotes omitted). In conducting the mandatory-versus-permissive analysis, courts employ traditional methods of contract construction, looking first to the plain language of the provision. *See Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) (beginning with plain meaning, supplementing with extrinsic evidence of intent, and ultimately concluding that the contract language was ambiguous). Only if the plain language permits of two or more reasonable interpretations will the court fall back upon default rules to resolve the ambiguity. *See id.* (construing the ambiguous provision against the drafter).

The use of mandatory language, like "shall," will not suffice — without more — to render a forum selection clause mandatory. In multiple cases, the Fifth Circuit has confronted forum selection clauses using "shall" but declined to hold that the provisions were mandatory. Shortly after the United States Supreme Court confirmed the enforceability of contractual forum selection clauses in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Fifth Circuit held that a clause stating that the agreement in issue "*shall* be . . . enforceable according to the laws of the state of New York" and that "the parties submit to the jurisdiction of the courts of New York" did not unambiguously restrict litigation to New York. *Keaty*, 503 F.2d at 956–57 (emphasis added). Addressing a clause that stated that the "law and courts of Zurich *shall* be applicable," the court noted that the "only thing certain about the clause . . . is that the parties consented to the personal jurisdiction of the Zurich courts," not that the provision made that forum exclusive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127–28 (5th Cir. 1994) (emphasis added).

Specifically, the Fifth Circuit and courts in other circuits have treated forum selection clauses that use obligatory terms but reference jurisdiction — as opposed to venue — as permissive. As the Fifth Circuit recently explained, "language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar)" will not suffice to render a forum selection clause mandatory. *Webber*, 811 F.3d at 768. In *Weber*, the Fifth Circuit cited with approval an earlier 10th Circuit opinion synthesizing cases across multiple circuits to show that drawing this distinction between clauses that refer to jurisdiction and those that refer to venue had long since established itself as the majority approach. *Id.* (citing *K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 499–500 (10th Cir. 2002)). The Fifth Circuit also expressly adopted the analysis in a Ninth Circuit opinion construing a forum selection clause. *Caldas*, 17 F.3d at 127–28 (5th Cir. 1994) (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987)). The provision in that case provided the laws of the State of California shall govern" and that the "courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the . . . contract." *Hunt Wesson Foods*, 817 F.2d at 76. The court held that the clause functioned as a permissive consent to jurisdiction, rather than as a binding limitation making the specified courts the exclusive forum for future litigation. *Id.* at 77.

Turning to the agreement in this case, the Court concludes that the forum selection clause at issue permits, but does not require, litigation in the specified forum. The provision in the agreement provides that for "any dispute arising out of or in connection with" the contract, two results follow: First, the "law of the state of Texas" shall govern; and second,

ORDER – PAGE 5

the "local courts of Dallas County, Texas shall have jurisdiction" to hear the case. Ex. To Pl.'s Orig. Compl. § 7 [1-1]. This clause mirrors — as a matter of logic, if not syntax — the one construed in *Hunt Wesson Foods*. As the Fifth Circuit has expressly approved of the reasoning and result in that case, the Court perceives but one reasonable interpretation of this forum selection clause. Accordingly, the Court holds that the forum selection clause at issue is permissive and declines to dismiss this action to enforce it.

### B. Venue Is Proper Under 28 U.S.C. § 1391(b)(2)

Next the Court turns to Jeet's argument that venue does not properly lie with this court under the federal venue statute. Because the Court agrees with OYO that a substantial part of the acts or omissions giving rise to the cause of action occurred in this District, the Court denies Jeet's motion.

Absent a claim-specific venue rule, the general venue statute, 28 U.S.C. § 1391 determines whether a particular district constitutes a proper venue for the litigation. Among other options, a plaintiff may file suit in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). In determining whether a *substantial* part of the events or omissions giving rise to a claim occurred in a particular district, courts should appraise the "entire sequence of events underlying the claim" rather than attempting to divine "a single 'triggering event.'" *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001) (quoting *First Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998)). "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts

must still be substantial." *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008).

Courts in the Fifth Circuit have split on who bears the burden of establishing compliance with the venue statute once the defendant has raised a Rule 12(b)(3) objection. *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp.3d 469, 473 n.2 (W.D. Tex. 2016) (collecting cases and identifying placing the burden on the plaintiff as the majority approach); *TGM Wind Servs., LLC v. Bartusek*, 2016 WL 9527980 (N.D. Tex. 2016) (Godbey, J.). The Court will continue to follow the majority approach placing the burden on the plaintiff.

OYO's uncontested allegations suffice to carry the burden. At the outset of this analysis, it bears emphasizing that OYO seeks, *inter alia*, a declaration that its business practices do not violate state and federal law regulating franchise relationships in response to a threatened class action. Complaint ¶¶ 36–37 [1]. OYO avers that it made high-level decisions about the structure of its business model throughout North America at its corporate headquarters in this District. Pl.'s Resp. to Def.'s Mot. to Dismiss 25 [16]. These decisions form an integral part of the chain of events or occurrences leading to the present declaratory judgment action. OYO further asserts, and Jeet does not contest, that the teams involved in marketing Jeet's hotel and pricing its rooms operated out of the Dallas headquarters. It follows that the parties expected substantial performance of the contract would occur in Dallas. Viewed as part of the "entire sequence of events underlying the claim," *Uffner*, 244 F.3d at 42, the Court concludes that the business decisions OYO made

within this District suffice to satisfy the substantiality requirement of 28 U.S.C. § 1391(b)(2).

### III. THE COURT MAY EXERCISE PERSONAL JURISDICTION OVER JEET

The Court notes that OYO instituted this action at the same time as two other related lawsuits. The Court has already addressed the materially similar objections to personal jurisdiction advanced by a similarly situated defendant. *OYO Hotels, Inc. v. Om Chamunda, LLC*, Civil Action No. 3:20-CV-3433 (N.D. Tex. Sept. 9, 2021) (order denying motion to dismiss) [23]. Because the Court finds that the personal jurisdiction analysis in that order applies to Jeet, the Court denies Defendant's motion to dismiss for want of personal jurisdiction for the reasons state in *Om Chamunda*.

### CONCLUSION

The Court concludes that exercise of personal jurisdiction over Jeet does not offend its Due Process rights, and venue properly lies in this District. Accordingly, the Court denies Jeet's motion to dismiss in its entirety.

Signed September 14, 2021.

_____
David C. Godbey
United States District Judge